UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TINA LANIER and CHRISTINA LANIER,

                Plaintiffs,                12 CV 1526 (ARR) (RER)

      -against-

                                                      **AMENDED COMPLAINT**

THE CITY OF NEW YORK, CHING NIEH,
IDRIS MOJEED, and MADELYN DOBLES,
                                                **PLAINTIFFS DEMAND**
                Defendants.              **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiffs Tina Lanier and Christina Lanier, by their attorneys, Reibman & Weiner, as and for their Amended Complaint, hereby allege as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.      At all times hereinafter mentioned, plaintiffs Tina Lanier and Christina Lanier, were adult female residents of Kings County, in the State of New York.

        2.      At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.      At all relevant times hereinafter mentioned, defendant Ching Nieh, whose shield number is currently believed to be 0027, was employed by the City of New York as a member of the NYPD.

        4.      At all relevant times hereinafter mentioned, defendant Idris Mojeed,

whose shield number is currently believed to be 2339, was employed by the City of New York as a member of the NYPD.

5. At all relevant times hereinafter mentioned, defendant Madelyn Dobles, whose shield number is currently believed to be 3004, was employed by the City of New York as a member of the NYPD.

6. Each of the individual defendants is sued herein in his or her individual and official capacities.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

9. On December 29, 2009, at about 4:00 p.m., (the "incident") plaintiffs Tina Lanier and Christina Lanier, were lawfully parked in front of or near 2911 Neptune Avenue in Brooklyn, New York. Plaintiffs and plaintiff Tina Lanier's infant daughter were present in the vehicle.

10. Plaintiffs were not engaged in any unlawful or suspicious activity.

11. As plaintiffs were preparing to exit the vehicle to visit a friend living in the area, the individual defendants arrived in unmarked NYPD vehicles, and approached plaintiffs' vehicle with guns drawn.

12. The defendants were in plain clothes, and plaintiffs had no idea that the defendants were members of the NYPD.

13. One of the male defendants, believed to be Nieh, jumped onto the hood of plaintiffs' car and pointed his gun directly at plaintiffs through the windshield, terrifying plaintiffs.

14. At this time, plaintiff Tina Lanier was on her cellular phone. She froze in terror, and the defendant believed to be Nieh repeatedly shouted at her to "get the fuck off the phone," and roll down the window.

15. Terrified, fearing for their physical safety, and with no knowledge that the defendants were members of the NYPD, plaintiffs froze.

16. Plaintiff Tina Lanier is a retired member of the NYPD. She recognized the defendants as members of the NYPD when she saw an NYPD-issued shield on one of the defendants.

17. Although there was no legal basis to stop, detain, or seize the plaintiffs, the individual defendants surrounded the vehicle, further terrifying plaintiffs.

18. Despite the absence of any evidence of wrongdoing on the part of plaintiffs, the defendants formally seized plaintiffs, and the defendant believed to be Nieh continued to yell at plaintiff Tina Lanier to "get the fuck off the phone!"

19. The decision to seize plaintiffs was objectively unreasonable under the circumstances.

20. Without explanation, the individual defendants then entered their

unmarked NYPD vehicles and drove away.

21. At no time did there exist any basis to utilize any level of force against the plaintiffs, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

22. The individual defendants are believed to have been assigned to the Narcotics Bureau for Brooklyn South at the time of the incident.

23. At no time prior to or during the encounter was there probable cause to seize plaintiffs.

24. At no time did any of the individual defendants take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the other individual defendants against plaintiffs.

25. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

26. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

27. Plaintiffs repeat the allegations contained in paragraphs "1" through "26" above as though stated fully herein.

28. The individual defendants willfully and intentionally seized and detained plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

29. The individual defendants willfully and intentionally subjected plaintiffs to physical force in excess of what was reasonable under the circumstances and caused plaintiffs to suffer emotional and physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary.

30. By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest, excessive force, unlawful searches of person and property, and denial of due process, and thereby violated or failed to prevent the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

31. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

**SECOND CAUSE OF ACTION**

32. Plaintiff repeats the allegations contained in paragraphs "1" through "31" above as though stated fully herein.

33. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

34. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

35. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiffs' seizure.

36. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision

of ranking officers of the NYPD

    37.    The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a.    Using excessive force on individuals, including but not limited to those who have already been handcuffed;

    b.    Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c.    Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

    d.    Retaliating against officers who report police misconduct; and

    e.    Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

    38.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

    a.    *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.);

    b.    *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c.    *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d.    *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e.    *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f.    *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.);

    g.    *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.);

  h. *Carmody* v. *City of New York,* 05-CV-8084 (HB) (SDNY);

  i. *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

  j. *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.);

  k. *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

  l. *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

  m. *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

  n. *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

  o. *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

  p. *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

  q. *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

  r. *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

  s. *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

39. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and

8

strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

40. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

41. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

42. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of her constitutional rights.

### THIRD CAUSE OF ACTION

43. Plaintiffs repeat the allegations contained in paragraphs "1" through "41" above as though stated fully herein.

44. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

45. More precisely, under this policy or plan, officers within the Narcotics Bureau, including the individual defendants, would secure warrants to search social clubs,

apartments, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges.  The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

46.  The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

47.  In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria.  Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

48.  The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

49.  In October 2011, following a bench trial in  New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports.  Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he

described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

50. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

51. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests and seizures without probable cause in order to create false or misleading arrest numbers.

52. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

    i.    Against the individual defendants on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    Against the municipal defendant on the second and third causes of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv.    such other relief as the Court deems just and proper.

Dated:    Brooklyn, New York
October 5, 2012

/s/
_____
Michael Lumer, Esq. (ML - 1947)
Reibman & Weiner
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743